21



F I L E D

MAY - 9 2013

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLERK'S OFFICE
DETROIT

UNITED STATES OF AMERICA

v.

D-3  ABDUL MALIK AL-JUMAIL,
        a.k.a. "TONY,"
D-4  FELICAR WILLIAMS,
D-5  MOHAMMED SADIQ,
D-6  JAMELLA AL-JUMAIL,
D-7  FIRAS ALKY,
D-10 CAREY VIGOR, M.D.,
D-11 KHALIL MACKIE,
        a.k.a. "Dr. K,"
D-12 ROBERT SO,
D-13 PHILANDIS THOMAS,

Defendants.

_____/

No. 2:12-cr-20272
Hon. Denise P. Hood

VIO.:

18 U.S.C. § 1349
18 U.S.C. § 371
18 U.S.C. § 1519
26 U.S.C. § 7206(1)
18 U.S.C. § 2
18 U.S.C. § 982

FILED
2013 MAY -9 P 3: 54
U.S. DIST. COURT CLERK
EAST. DIST. MICH.
DETROIT

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

### General Allegations

At all times relevant to this Indictment:

1.     The Medicare program was a federal health care program providing benefits to persons who were over the age of 65 or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services (CMS), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.      The Medicare program included coverage under two primary components, hospital insurance (Part A) and medical insurance (Part B).  Part A covered physical therapy, occupational therapy, and skilled nursing services if a facility was certified by CMS as meeting certain requirements.  Part B of the Medicare Program covered the cost of physicians' services and other ancillary services not covered by Part A.  The physical therapy, occupational therapy and other services at issue in this Indictment were covered by Part A.

4.      National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan.  TrustSolutions, LLC was the Program Safeguard Contractor for Medicare Part A in the state of Michigan.

5.      By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement.  To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies and procedures, rules, and regulations, issued by CMS and its authorized agents and contractors.

6.      Upon certification, the medical provider, whether a clinic or an individual, was assigned a provider identification number for billing purposes (referred to as a PIN).  When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider.  When an individual medical provider was associated with a clinic, Medicare Part B required that the individual provider number associated with the clinic be placed on the claim submitted to the Medicare contractor.

7.      Health care providers were given and/or provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and

regulations.  Providers could only submit claims to Medicare for services they rendered and providers were required to maintain patient records to verify that the services were provided as described on the claim form.

8.      To receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered.

9.      A home health agency was an entity that provides health services, including but not limited to skilled nursing, physical and occupational therapy, and speech pathology services, to homebound patients.

10.     An adult day care facility was an entity that provides health services, including but not limited to psychotherapy services, to patients with certain mental health conditions.

11.     Reliance Home Care, LLC (Reliance), was a Michigan corporation doing business at 28303 Dequindre Road, Suite 110, Madison Heights, Michigan.  Reliance was a home health agency that purportedly provided home health services to Medicare beneficiaries.  Reliance was a Medicare provider and submitted claims directly to Medicare.  Reliance was owned and controlled by Sachin Sharma.

12.     First Choice Home Health Care Services, Inc. (First Choice) was a Michigan corporation doing business at 28091 Dequindre Road, Suite 205, Madison Heights, Michigan.  First Choice was a home health agency that purportedly provided home health services to Medicare beneficiaries.  First Choice was a Medicare provider and submitted claims directly to Medicare.  First Choice was owned and controlled by Sachin Sharma and MOHAMMED SADIQ.

13.    Associates in Home Care, Inc. (Associates) was a Michigan corporation doing business at 44444 Mound Road, Suite 530, Sterling Heights, Michigan, and 52028 Naugatuck Drive, Macomb, Michigan.   Associates was a home health agency that purportedly provided home health services to Medicare beneficiaries.   Associates was a Medicare provider and submitted claims directly to Medicare.   Associates was operated and controlled by ABDUL MALIK AL-JUMAIL (a.k.a. "TONY") and FIRAS ALKY.

14.    Haven Adult Day Care Center, LLC (Haven) was a Michigan corporation that operated at 16551 East Warren Avenue, Detroit, Michigan, and 5001 Kensington Avenue, Detroit, Michigan.   Haven was an adult day care facility that purportedly provided psychotherapy services to Medicare beneficiaries.   Haven was a Medicare provider and submitted claims directly to Medicare.   Haven was operated and controlled by FELICAR WILLIAMS, and CAREY VIGOR, M.D. was a provider at Haven.

15.    ABC Home Care, Inc. (ABC) was a Michigan corporation doing business at 28091 Dequindre Road, Madison Heights, Michigan.   ABC was a home health agency that purportedly provided home health services to Medicare beneficiaries.   ABC was a Medicare provider and submitted claims directly to Medicare.   ABC was operated and controlled by ABDUL MALIK AL-JUMAIL (a.k.a. "TONY") and FIRAS ALKY.

16.    Swift Home Care, LLC (Swift) was a Michigan corporation doing business at 208303 Dequindre Road, Suite 120, Madison Heights, Michigan.   Swift was a home health agency that purportedly provided home health services to Medicare beneficiaries.   Swift was a Medicare provider and submitted claims directly to Medicare.   Swift was operated and controlled by ABDUL MALIK AL-JUMAIL (a.k.a. "TONY") and FIRAS ALKY.

17.    Accessible Home Care, Inc. (Accessible) was a Michigan corporation doing business at 13365 Michigan Avenue, Suite 201, Dearborn Michigan.   Accessible was a home

health agency that purportedly provided home health services to Medicare beneficiaries. Accessible was a Medicare provider and submitted claims directly to Medicare. Accessible was operated and controlled by ABDUL MALIK AL-JUMAIL (a.k.a. "TONY") and JAMELLA AL-JUMAIL.

18.    ABDUL MALIK AL-JUMAIL (a.k.a. "TONY") was a resident of Wayne County, Michigan, and operated and controlled Associates, ABC, Swift, and Accessible.

19.    FELICAR WILLIAMS was a resident of Wayne County, Michigan, and operated and controlled Haven.

20.    MOHAMMED SADIQ was a resident of Oakland County, Michigan, and operated and controlled First Choice.

21.    JAMELLA AL-JUMAIL was a resident of Wayne County, Michigan, and operated and controlled Accessible. She is the daughter of ABDUL MALIK AL-JUMAIL (a.k.a. "TONY").

22.    FIRAS ALKY was a resident of Macomb County, Michigan, and operated and controlled Associates, ABC, and Swift.

23.    CAREY VIGOR, M.D., was a resident of St. Clair County, Michigan, and worked for Haven.

24.    KHALIL MACKIE (a.k.a. "Dr. K"), was a resident of Wayne County, Michigan, and worked for Associates and Accessible.

25.    ROBERT SO was a resident of Wayne County, Michigan, and worked for First Choice and Reliance.

26.    PHILANDIS THOMAS was a resident of Oakland County, Michigan, and worked for First Choice and Reliance.

**COUNT 1**
**(18 U.S.C. § 1349 - Health Care Fraud Conspiracy)**
**D-3  ABDUL MALIK AL-JUMAIL, a.k.a. "TONY"**
**D-4  FELICAR WILLIAMS**
**D-5  MOHAMMED SADIQ**
**D-6  JAMELLA AL-JUMAIL**
**D-7  FIRAS ALKY**
**D-10  CAREY VIGOR, M.D.**
**D-11  KHALIL MACKIE, a.k.a. "Dr. K"**
**D-12  ROBERT SO**
**D-13  PHILANDIS THOMAS**

27.    Paragraphs 1 through 26 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

28.    From in or around January 2007 and continuing through in or around April 2012, the exact dates being unknown to the Grand Jury, at Wayne County in the Eastern District of Michigan, and elsewhere, the defendants ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D., KHALIL MACKIE (a.k.a. "Dr. K"), ROBERT SO, PHILANDIS THOMAS and other co-conspirators known and unknown, did willfully and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

## Purpose of the Conspiracy

29.     It was a purpose of the conspiracy for defendants ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D., KHALIL MACKIE (a.k.a. "Dr. K"), ROBERT SO, PHILANDIS THOMAS and others to unlawfully enrich themselves by, among other things, (a) submitting false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare and the receipt and transfer of the proceeds from the fraud; and (c) diverting proceeds of the fraud for the personal use and benefit of the defendants and their co-conspirators.

## Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

30.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY and others would incorporate or acquire home health care, psychotherapy, and other medical service companies in and around the Eastern District of Michigan and elsewhere, including Reliance, First Choice, Associates, ABC, Accessible, Swift, and Haven.

31.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D. and others would submit or cause to be submitted Medicare enrollment applications and obtain Medicare provider numbers for Reliance, First Choice, Associates, ABC, Accessible, Swift, and Haven and other home health care, psychotherapy and medical service companies, so as to allow these companies to bill Medicare.

32.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D. and others would operate and control home health care, psychotherapy, and other medical service companies in and around the Eastern District of Michigan and elsewhere, including Reliance, First Choice, Associates, ABC, Accessible, Swift, and Haven.

33.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), MOHAMMED SADIQ, FIRAS ALKY and others would pay kickbacks and bribes to recruiters and others, including FELICAR WILLIAMS and PHILANDIS THOMAS, for information of Medicare beneficiaries that would be used to bill Medicare for home health services that were medically unnecessary and not performed.

34.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D., KHALIL MACKIE (a.k.a. "Dr. K), ROBERT SO and others would fabricate or alter patient files and medical documents to give the false impression that medical services billed to Medicare were medically necessary and were provided.

35.     MOHAMMED SADIQ and others would control the day-to-day operations at First Choice, and with ROBERT SO and PHILANDIS THOMAS would bill Medicare and cause Medicare to be billed for home health care and related services purportedly provided by First Choice that were medically unnecessary and not provided.

36.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FIRAS ALKY and others would control the day-to-day operations at Associates, ABC, and Swift, and, with JAMELLA AL-JUMAIL, KHALIL MACKIE (a.k.a. "Dr. K"), and others, would bill Medicare and cause Medicare to be billed for home health care and related services purportedly provided by these companies that were medically unnecessary and not provided.

8

37.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), JAMELLA AL-JUMAIL and others would control the day-to-day operations at Accessible, and with KHALIL MACKIE (a.k.a. "Dr. K") and others would bill Medicare and cause Medicare to be billed for home health care and related services purportedly provided by Accessible that were medically unnecessary and not provided.

38.     FELICAR WILLIAMS and others would control the day-to-day operations at Haven, and with CAREY VIGOR, M.D., would bill Medicare and cause Medicare to be billed for psychotherapy and related services purportedly provided by Haven that were medically unnecessary and not provided.

39.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D., KHALIL MACKIE (a.k.a. "Dr. K"), ROBERT SO, PHILANDIS THOMAS and others would cause Reliance, First Choice, Associates, ABC, Accessible, Swift, Haven and other home health, psychotherapy, and medical service companies, to submit approximately $29.1 million in claims to Medicare for the cost of home health services, psychotherapy and other medical services.

40.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY and others would transfer and disburse, and cause the transfer and disbursement of, monies from the various corporate accounts of Reliance, First Choice, Associates, ABC, Accessible, Swift, Haven and other home health, psychotherapy, and medical service companies, to themselves and others.

All in violation of Title 18, United States Code, Section 1349.

**COUNT 7**
**(18 U.S.C. § 371 – Conspiracy to Pay and Receive Health Care Kickbacks)**
**D-3  ABDUL MALIK AL-JUMAIL, a.k.a. "TONY"**
**D-4  FELICAR WILLIAMS**
**D-5  MOHAMMED SADIQ**
**D-7  FIRAS ALKY**
**D-13  PHILANDIS THOMAS**

41.    Paragraphs 1 through 26 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

42.    From in or around January 2007, and continuing through in or around April 2012, the exact dates being unknown to the Grand Jury, at Wayne County and elsewhere in the Eastern District of Michigan, defendants ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, FIRAS ALKY, PHILANDIS THOMAS and others did willfully and knowingly combine, conspire, confederate and agree with others, known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

(a) to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A) by knowingly and willfully offering or paying any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

(b) to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A) by knowingly and willfully soliciting or receiving any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind in return for referring an individual to a person for the furnishing or

arranging for the furnishing of any item or service for which payment may be made in whole or in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b).

43.     It was a purpose of the conspiracy for defendants ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), MOHAMMED SADIQ, FIRAS ALKY and others to unlawfully enrich themselves by offering and paying kickbacks and bribes to patient recruiters and employees of psychotherapy companies, including defendants FELICAR WILLIAMS, PHILANDIS THOMAS and others, who solicited and received kickbacks and bribes, and in return provided Medicare beneficiary information that ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, FIRAS ALKY and others would used to bill Medicare for home health and related medical services.

### Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

44.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, FIRAS ALKY and others would incorporate or acquire home health care, psychotherapy, and other medical service companies in and around the Eastern District of Michigan and elsewhere, including Reliance, First Choice, Associates, ABC, Swift, Accessible, and Haven.

45.     ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, FIRAS ALKY and others would submit or cause to be submitted Medicare enrollment applications and obtain Medicare provider numbers for Reliance, First Choice, Associates, ABC, Swift, Accessible, Haven, and other home health care, psychotherapy and medical service companies, so as to allow these companies to bill Medicare.

46.    ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, FIRAS ALKY and others would pay money from Reliance, Associates, ABC, Swift, Accessible, Haven, and other home health care company bank accounts to patient recruiters and employees of psychotherapy companies, including FELICAR WILLIAMS and PHILANDIS THOMAS.

47.    These payments would be made, in part, to pay patient recruiters and employees of psychotherapy companies, including FELICAR WILLIAMS and PHILANDIS THOMAS, in exchange for their provision of Medicare beneficiary information that was to be used by ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), MOHAMMED SADIQ, FIRAS ALKY and others to bill for home health and other medical services.

**Overt Acts**

In furtherance of the conspiracy, and to accomplish its purposes and objects, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, the following overt acts, among others:

48.    From in or around 2007 through in or around 2012, the exact dates being unknown to the Grand Jury, in and around Wayne County in the Eastern District of Michigan and elsewhere, MOHAMMED SADIQ, FIRAS ALKY, and Sachin Sharma made money payments to patient recruiters, including PHILANDIS THOMAS and others, in return for providing Medicare beneficiary information to be used to bill Medicare.

49.    In or around June 2008, the exact dates being unknown to the Grand Jury, in or around Wayne County in the Eastern District of Michigan and elsewhere, MOHAMMED SADIQ did make money payments of at least $1,600 to PHILANDIS THOMAS in return for providing Medicare beneficiary information to be used to bill Medicare.

50.     In or around July 2010, the exact dates being unknown to the Grand Jury, in or around Wayne County in the Eastern District of Michigan and elsewhere, ABDUL MALIK AL-JUMAIL (a.k.a. "TONY") did offer to make money payments to FELICAR WILLIAMS and an unindicted co-conspirator, in return for providing Medicare beneficiary information to be used to bill Medicare.

51.     In or around November 2011, the exact date being unknown to the Grand Jury, in or around Wayne County in the Eastern District of Michigan, ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), did willfully offer another person at least $400 in return for providing Medicare beneficiary information to be used to bill Medicare.

All in violation of Title 18, United States Code, Section 371.

**COUNT 8**
**(18 U.S.C. §§ 1519 and 2 – Destruction of Records in Federal Investigations)**
**D-6  JAMELLA AL-JUMAIL**

52.     Paragraphs 1 through 26 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

53.     From in or around January 2007 to in or around May 2012, defendants ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), JAMELLA AL-JUMAIL and others controlled and participated in day-to-day operations at Associates and Accessible, and caused Associates and Accessible to bill Medicare for home health care and related services that were not medically necessary and not provided.

54.     On or about May 2, 2012, in Wayne County in the Eastern District of Michigan, JAMELLA AL-JUMAIL learned that federal agents had arrested ABDUL MALIK AL-JUMAIL (a.k.a. "TONY") and others, and had initiated a search of Associates' business premises.

55.     On or about May 2, 2012, after learning of ABDUL MALIK AL-JUMAIL's (a.k.a. "TONY") arrest, JAMELLA AL-JUMAIL caused to be removed from Accessible's business premises records, documents, and tangible objects relating to Accessible's Medicare billings.

56.     On or about May 2, 2012, JAMELLA AL-JUMAIL and others knowingly altered, destroyed, mutilated, concealed, covered up, falsified, or made false entries in the records, documents, and tangible objects relating to Accessible's Medicare billings that were removed from its premises, with the intent to impede, obstruct, or influence an investigation or proper administration of a matter within the jurisdiction of the United States Department of Health and Human Services, in relation to or contemplation of any such matter or case.

All in violation of Title 18, United States Code, Sections 1519 and 2.

### COUNTS 9 through 12
### (18 U.S.C. §§ 1347 and 2 – Health Care Fraud)
### D-10  CAREY VIGOR, M.D.
### D-12  ROBERT SO

57.     Paragraphs 1 through 26 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

58.     On or about the dates enumerated below, in Wayne County in the Eastern District of Michigan, and elsewhere, defendants CAREY VIGOR, M.D. and ROBERT SO, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations,

and promises, money and property owned by, and under the custody and control of Medicare, in

connection with the delivery of and payment for health care benefits, items and services.

| Count | Defendant | Medicare Beneficiary | Approx. Date of Service | Description of Items Billed/ Billing Code | Approx. Amount Claimed |
|---|---|---|---|---|---|
| 9 | VIGOR | D.B. | 6/16/10 | Group Psychotherapy CPT Code 90853 | $40.00 |
| 10 | VIGOR | R.B. | 6/16/10 | Group Psychotherapy CPT Code 90853 | $40.00 |
| 11 | SO | T.L. | 11/17/10 | Physical Therapy G0151 | $175.00 |
| 12 | SO | T.L. | 11/19/10 | Physical Therapy G0151 | 175.00 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 13
### (26 U.S.C. § 7206(1) – Filing a False Tax Return)
### D-5  MOHAMMED SADIQ

59.      Paragraphs 1 through 26 of the General Allegations section of this Second

Superseding Indictment are re-alleged and incorporated by reference as though fully set forth

herein.

60.      During the calendar year 2008, defendant MOHAMMED SADIQ, a resident of

Oakland County, Michigan, with businesses that he owned and controlled located in and around

Detroit, Michigan, had and received taxable income from those businesses.

61.      Well knowing the foregoing facts, MOHAMMED SADIQ, on or about May 17,

2010, in Michigan and elsewhere, did willfully make and subscribe an United States Individual

Income Tax Return, Form 1040, for calendar year 2008, which was verified by a written

declaration that it was made under the penalties of perjury and which SADIQ did not believe to

be true and correct as to every material matter.  That United States Individual Income Tax

Return, Form 1040, which was filed with the Internal Revenue Service, was not true and correct

to every material matter, in that SADIQ reported on Line 22 total income of $25,048, when he then and there knew he had received income in excess of that amount from businesses located in and around Detroit, Michigan that he owned and controlled, including First Choice.

All in violation of Title 26, United States Code, Section 7201.

## COUNT 14
### (26 U.S.C. § 7206(1) – Filing a False Tax Return)
### D-5  MOHAMMED SADIQ

62.     Paragraphs 1 through 26 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

63.     During the calendar year 2009, defendant MOHAMMED SADIQ, a resident of Oakland County, Michigan, with businesses that he owned and controlled located in and around Detroit, Michigan, had and received taxable income from those businesses.

64.     Well knowing the foregoing facts, MOHAMMED SADIQ, on or about September 15, 2010, in Michigan and elsewhere, did willfully make and subscribe an United States Individual Income Tax Return, Form 1040, for calendar year 2009, which was verified by a written declaration that it was made under the penalties of perjury and which SADIQ did not believe to be true and correct as to every material matter.  That United States Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service, was not true and correct to every material matter, in that SADIQ reported on Line 22 total income of $42,479, when he then and there knew he had received income in excess of that amount from businesses located in and around Detroit, Michigan that he owned and controlled, including First Choice.

All in violation of Title 26, United States Code, Section 7201.

## COUNT 15
### (26 U.S.C. § 7206(1) – Filing a False Tax Return)
### D-5  MOHAMMED SADIQ

65.     Paragraphs 1 through 26 of the General Allegations section of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein.

66.     During the calendar year 2010, defendant MOHAMMED SADIQ, a resident of Oakland County, Michigan, with businesses that he owned and controlled located in and around Detroit, Michigan, had and received taxable income from those businesses.

67.     Well knowing the foregoing facts, MOHAMMED SADIQ, on or about July 16, 2012, in Michigan and elsewhere, did willfully make and subscribe an United States Individual Income Tax Return, Form 1040, for calendar year 2010, which was verified by a written declaration that it was made under the penalties of perjury and which SADIQ did not believe to be true and correct as to every material matter.  That United States Individual Income Tax Return, Form 1040, which was filed with the Internal Revenue Service, was not true and correct to every material matter, in that SADIQ reported on Line 22 total income of $35,000, when he then and there knew he had received income in excess of that amount from businesses located in and around Detroit, Michigan that he owned and controlled, including First Choice.

All in violation of Title 26, United States Code, Section 7201.

### CRIMINAL FORFEITURE
### (18 U.S.C. § 982)

68.     The allegations contained in Counts One through Fifteen are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of any property, real or personal obtained by the defendants, that is, ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED

17

SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D., KHALIL MACKIE, (a.k.a. "Dr. K"), ROBERT SO, and PHILANDIS THOMAS by commission of the offenses charged in Counts One through Fifteen, pursuant to the provisions of 18 U.S.C. §§ 982(a)(1), 982(a)(7), and 28 U.S.C. § 2461.

69.   As a result of the violation of Title 18, United States Code, Section 1349, as set forth in this Indictment, defendants ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D., KHALIL MACKIE (a.k.a. "Dr. K"), ROBERT SO, and PHILANDIS THOMAS shall forfeit to the United States any property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of such violation, pursuant to 18 U.S.C. §§ 982(a)(1), 982(a)(7), and 28 U.S.C. § 2461.

70.   As a result of the violations of Title 18, United States Code, Section 571, as set forth in this Indictment, defendants ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, FIRAS ALKY, and PHILANDIS THOMAS shall forfeit to the United States any property, real or personal, that constitutes or is derived from, gross proceeds traceable to the commission of such violations, pursuant to 18 U.S.C. § 982(a)(7) and 28 U.S.C. § 2461.

71.   Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a)   Cannot be located upon the exercise of due diligence;

b)   Has been transferred or sold to, or deposited with, a third party;

c)   Has been placed beyond the jurisdiction of the Court;

d)   Has been substantially diminished in value; or

e)   Has been commingled with other property that cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b) and/or 28 U.S.C. § 2461, to seek to forfeit any other property of defendants ABDUL MALIK AL-JUMAIL (a.k.a. "TONY"), FELICAR WILLIAMS, MOHAMMED SADIQ, JAMELLA AL-JUMAIL, FIRAS ALKY, CAREY VIGOR, M.D., KHALIL MACKIE (a.k.a. "Dr. K"), ROBERT SO, and PHILANDIS THOMAS, up to the value of the forfeitable property described above.

72.   <u>Money Judgment</u>:  A sum of money equal to at least $25,395,027 in United States currency, or such amount as is proved at trial in this matter, representing the total amount of proceeds obtained as a result of defendant's violations of 18 U.S.C. §§ 1349 and 1347, as alleged in this Indictment.

All pursuant to Title 18, United States Code, Section 982(a)(7).

THIS IS A TRUE BILL.

s/GRAND JURY FOREPERSON
Grand Jury Foreperson

BARBARA L. MCQUADE
UNITED STATES ATTORNEY

s/WAYNE F. PRATT
WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, Michigan  48226
(313) 226-2548

s/GEJAA T. GOBENA
GEJAA T. GOBENA
Deputy Chief
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C.  20005
(202) 305-1310

s/WILLIAM G. KANELLIS
WILLIAM G. KANELLIS
Trial Attorney
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005
(202) 674-5661
william.kanellis2@usdoj.gov

Dated:  May 9, 2013

# ORIGINAL

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cover Sheet** | Case Number<br>12-CR-20272 |
|---|---|---|

**NOTE:** It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

**Reassignment/Recusal Information** This matter was opened in the USAO prior to August 15, 2008   **[ ]**

| **Companion Case Information** | **Companion Case Number:** |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** |
| ☐ Yes   ☒ No | **AUSA's Initials:** WGK   MAY - 9 2013   CLERK'S OFFICE DETROIT |

**Case Title:** USA v.  SACHIN SHARMA, ET AL.

**County where offense occurred :**  WAYNE COUNTY, MICHIGAN

**Check One:**   ☒ **Felony**      ☐ **Misdemeanor**      ☐ **Petty**

_____Indictment/_____Information --- **no prior complaint.**

_____Indictment/_____Information --- based upon prior complaint [Case number: ]

__X_ Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

**Superseding Case Information**

**Superseding to Case No:  12-CR-20272**          **Judge:  HON. DENISE P. HOOD**

☐   Original case was terminated; no additional charges or defendants.
☐   Corrects errors; no additional charges or defendants.
☐   Involves, for plea purposes, different charges or adds counts.
☒   Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|
| D-5   MOHAMMED SADIQ, | 26 U.S.C. § 7206(1) | |
| D-10   CAREY VIGOR, M.D., | 18 U.S.C. § 1349<br>18 U.S.C. §§ 1347 and 2 | |
| D-11   KHALIL MACKIE, a.k.a. "Dr. K," | 18 U.S.C. § 1349 | |
| D-12   ROBERT SO, | 18 U.S.C. § 1349<br>18 U.S.C. §§ 1347 and 2 | |
| D-13   PHILANDIS THOMAS, | 18 U.S.C. § 1349<br>18 U.S.C. § 371 | |

FILED  2013 MAY -9  P 3:54  U.S. DIST. COURT CLERK  EAST DIST MICH.  DETROIT

**Please take notice that the below listed Trial Attorney is the attorney of record for the above captioned case.**

May 9, 2013
Date

WILLIAM G. KANELLIS
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C.  20005
Phone:  (202) 674-5661
Fax: (313) 226-2621
Email: William.Kanellis2@usdoj.gov

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

10/13/09