# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,            Criminal Case No. 12-20272
                                           Civil Case No. 16-12900
                                           HON. DENISE PAGE HOOD

v.

MOHAMMED SADIQ (D-5),

      Defendant-Petitioner.

_____/

## ORDER DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE OR CORRECT SENTENCE [#551]; ORDER DISMISSING CIVIL CASE NO. 16-12900; and ORDER DENYING CERTIFICATE OF APPEALABILITY

## I. BACKGROUND

On May 14, 2013, Defendant Mohammed Sadiq ("Sadiq") was charged in a Second Superseding Indictment with one count of Health Care Fraud Conspiracy, one count of Conspiracy to Pay and Receive Health Care Kickbacks, and three counts of Filing a False Tax Return. (Doc # 156) The indictment also contained criminal forfeiture provisions. On May 1, 2014, a Third Superseding Indictment was returned, but no additional charges were brought against Sadiq. (Doc # 287)

On March 13, 2015, Sadiq entered a plea of guilty to one count of Health Care Fraud Conspiracy and one count of Filing a False Tax Return, pursuant to a

Rule 11 Plea Agreement. (Doc # 420) The Court sentenced Sadiq to be imprisoned for a total term of 80 months on the Health Care Fraud Conspiracy count and 24 months on the Filing a False Tax Return count, followed by supervised release for a term of one year, the sentence to run concurrent as to each count. The Court entered an Amended Judgment on September 16, 2015. (Doc # 502) The Court also ordered Sadiq to pay $14,164,266.43 in restitution. *Id.* Sadiq did not file an appeal in this matter.

On August 8, 2016, Sadiq filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 on the basis of (1) an alleged violation of his Sixth Amendment right to hire counsel of his choice due to pre-plea forfeiture of property, and (2) alleged ineffective assistance of counsel. (Doc # 551) The Government filed a Response on September 30, 2016. (Doc # 569) Sadiq filed a Reply on November 23, 2016. (Doc # 584)

## II. ANALYSIS

Section 2255 authorizes a federal prisoner to move the district court to vacate a sentence. 28 U.S.C. § 2255(a). Motions brought under Section 2255 are subject to a one-year limitations period established by the Antiterrorism and Effective Death Penalty Act of 1996, generally running from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2253(f)(1); *Dunlap v.*

*United States*, 250 F.3d 1001, 1004-05 (6th Cir. 2001). As an initial matter, the Court notes that Sadiq's Motion was timely filed.

In order to prevail on a Section 2255 motion, the movant must show "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## A. Right to Hire Counsel of Choice

Sadiq first argues that the pre-plea attachment / enjoining of certain major assets violated his Sixth Amendment right to hire counsel of his choice, relying solely on *Luis v. United States*, 136 S. Ct. 1083 (2016). Sadiq identifies five pieces of property that he claims were his own innocent property with no connection to the crime later charged: (1) $139,182.75 from a Flagstar Account ("Flagstar Account"); (2) 2011 Acura MDX ("Acura"); (3) $155,192.42 from a Merrill Lynch Account ("Lynch Account"); (4) Real property located at 6812 Pine Way Drive, Troy, Michigan ("Pine Way Residence"); and (5) Real property located at 3828 Walnut Brook Drive, Rochester Hills, Michigan ("Walnut Condo"). Sadiq claims that he wanted to hire a large law firm with many top attorneys from out of town to handle his complex case; however, because he did not have sufficient funds available, he had no choice but to hire a local firm that delivered very little.

The Government responds that *Luis* does not apply retroactively to Sadiq's case, which became final before the Supreme Court decided *Luis*. The Government further argues that even if *Luis* did apply, Sadiq's argument lacks merit because the property in question was tainted (as admitted by Sadiq in his Rule 11 plea agreement) and because there was no motion to freeze assets pursuant to 18 U.S.C. § 1345 as in *Luis*.

The Supreme Court held in *Luis* that the pretrial restraint of legitimate, *untainted* assets needed to pay a *reasonable* fee for the assistance of counsel of choice violates the Sixth Amendment. *Luis*, 136 S. Ct. at 1088, 1096. The Sixth Amendment guarantees a defendant a fair opportunity to secure counsel of his own choice. *Id.* at 1089. However, a defendant's fair opportunity to secure counsel of his own choice has limits. *Id.* A defendant has no right, for example, to an attorney who is not a member of the bar, who has a conflict of interest with an opposing party, or whom the defendant cannot afford to hire. *Id.*

The Supreme Court has also held that the pre-conviction freezing of assets before they are finally adjudged to be forfeitable is constitutionally permissible based on a finding of probable cause to believe that the property will ultimately be proved forfeitable. *United States v. Monsanto*, 491 U.S. 600, 615 (1989) (noting that the governmental intrusion is not as severe where the defendant is not ousted from his property but merely retrained from disposing of it). The Supreme Court

applied this standard even where the defendant sought to use the disputed property

to pay a lawyer. The *Monsanto* court observed:

> Indeed, it would be odd to conclude that the Government may not
> restrain property, such as the home and apartment in respondent's
> possession, based on a finding of probable cause, when we have held
> that (under appropriate circumstances), the Government may restrain
> *persons* where there is a finding of probable cause to believe that the
> accused has committed a serious offense. . . .
>
> [I]f the Government may, post-trial, forbid the use of forfeited assets
> to pay an attorney, then surely no constitutional violation occurs
> when, after probable cause is adequately established, the Government
> obtains an order barring a defendant from frustrating that end by
> dissipating his assets prior to trial.

*Id.* at 615-16 (emphasis in original).

In enacting the forfeiture statutes, "Congress decided to give force to the old

adage that 'crime does not pay,'" and there is "no evidence that Congress intended

to modify that nostrum to read 'crime does not pay, except for attorney's fees.'"

*Id.* at 614.

> Since *Monsanto*, the lower courts have generally provided a hearing
> to any indicted defendant seeking to lift an asset restraint to pay for a
> lawyer. In that hearing, they have uniformly allowed the defendant to
> litigate . . . whether probable cause exists to believe that the assets in
> dispute are traceable or otherwise sufficiently related to the crime
> charged in the indictment.

*Kaley v. United States*, 134 S. Ct. 1090, 1095 (2014).

A grand jury indicted Sadiq on one count of Health Care Fraud Conspiracy,

one count of Conspiracy to Pay and Receive Health Care Kickbacks, and three

counts of Filing a False Tax Return. The indictment stated that, if convicted, Sadiq would be required to forfeit any property directly or indirectly traceable to those offenses pursuant to 18 U.S.C. § 982 and 28 U.S.C. § 2461. After the indictment, the Government seized funds from the Flagstar Account, Lynch Account, and the Acura vehicle pursuant to federal seizure warrants, identifying these as property constituting proceeds and/or funds involved in violations of federal health care fraud laws, and as property that was forfeitable civilly and criminally pursuant to 18 U.S.C. § 981 and 18 U.S.C. § 982.

When the Government seized these assets, a grand jury had already found probable cause to think that Sadiq committed the offenses charged,[1] and a federal seizure warrant had already issued finding probable cause that the assets in question were directly or indirectly traceable to those offenses. Sadiq never challenged any warrant, and he never sought to lift any restraint on any asset to pay for a lawyer. Indeed, Sadiq notes in this Motion that he was able to pay $65,000.00 to retain an attorney he chose (Doc # 551, Pg ID 9065), and he stated

---

[1] "The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime. And that inviolable grand jury finding, we have decided, may do more than commence a criminal proceeding (with all the economic, reputational, and personal harm that entails); the determination may also serve the purpose of immediately depriving the accused of her freedom. . . .

The same result follows where, as here, an infringement on the defendant's property depends on a showing of probable cause that she committed a crime. If judicial review of the grand jury's probable cause determination is not warranted (as we have so often held) to put a defendant on trial or place her in custody, the neither is it needed to freeze her property."

*Kaley*, 134 S. Ct. at 1098.

under oath that he was satisfied with that attorney's advice and services (Doc # 538, Pg ID 8882).

Also after the indictment, the Government filed affidavits relating to matters affecting title to realty as provided for in M.C.L. § 565.451a for the Pine Way Residence and the Walnut Condo. (Doc # 569-1) Michigan law allows for such an affidavit to be filed in the office of the register of deeds of the county where the property is situated if the affiant has "[k]nowledge of the happening of any condition or event that may terminate an estate or interest in real property." M.C.L. § 565.451a(b). The Government's affidavits stated that the Pine Way Residence and Walnut Condo may be subject to federal forfeiture statutes 18 U.S.C. § 981, 28 U.S.C. § 2461, and 18 U.S.C. § 982 as "property involved in a transaction, or attempted transaction, or property that constitutes proceeds, whether direct or indirect, or property traceable thereto, in violation of federal statutes, or any property traceable to such property." (Doc # 569-1) Sadiq never sought to lift any restraint on the Pine Way Residence or Walnut Condo to pay for a lawyer.

Sadiq then entered a plea of guilty to one count of Health Care Fraud Conspiracy and one count of Filing a False Tax Return, pursuant to a Rule 11 Plea Agreement. Sadiq admitted in his Rule 11 Plea Agreement that the Flagstar Account, Acura, Lynch Account, Pine Way Residence, and Walnut Condo constituted or were "derived directly or indirectly, from gross proceeds traceable to

Defendant's conspiracy to commit health care fraud."[2]  (Doc # 420, Pg ID 2559) Sadiq agreed to forfeit the aforementioned property to the United States, and he agreed to the entry of a forfeiture money judgment against him in favor of the United States in the amount of $14,164.226.43.  Sadiq further agreed to waive all constitutional and statutory charges to any forfeiture carried out in accordance with the Rule 11 Plea Agreement.

After the entry of the Rule 11 Plea Agreement, the Government filed an Unopposed Application for Entry of Preliminary Order of Forfeiture.  (Doc # 491) Sadiq did not challenge the Government's Application.  The Court then entered a Preliminary Order of Forfeiture.  (Doc # 496)  The Court entered an Amended Judgment on September 16, 2015 ordering Sadiq to pay $14,164,266.43 in restitution to the United States Department of Health & Human Services and to the IRS.  (Doc # 502)  The Court further ordered that, pursuant to 18 U.S.C. § 982(a)(7), § 982(a)(1), and 28 U.S.C. § 2461, Sadiq shall forfeit the Flagstar Account, Acura, Lynch Account, Pine Way Residence, Walnut Condo, and a forfeiture money judgment in the amount of $14,164,266.43.  *Id.*

The Court concludes that any pre-plea restraint on Sadiq's assets did not violate his Sixth Amendment right to hire counsel of his choice.  The property at

---

[2] "[D]ispositions by guilty plea are accorded a great measure of finality."  *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).  "Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible."  *Id.* at 74.

issue was identified as tainted from the outset, and Sadiq never challenged that. He never sought to lift any restraint on any asset to pay for a lawyer, and he was able to retain a lawyer of his choice. He also admitted in his Rule 11 plea agreement that the property at issue was derived directly or indirectly from gross proceeds traceable to his conspiracy to commit health care fraud. Under these circumstances, the Court concludes that Sadiq has not met his burden of showing that his sentence was imposed in violation of his Sixth Amendment right to hire counsel of his choice.

The Court notes that Sadiq's reliance on *Luis* is misplaced for several reasons. First, *Luis* was decided on March 30, 2016, and the final judgment in this case was entered on September 16, 2015. *Luis*'s holding has not been held to be retroactive.[3] Second, the property in Luis was frozen pursuant to a statute not at play in this case, 18 U.S.C. § 1345, which allows "other property of equivalent value" belonging to a criminal defendant accused of violations of federal health care or banking laws to be frozen before trial. Third, the parties in *Luis* conceded that the property at issue was untainted by the crime and in no way associated with the planning, implementing, or concealing of the crime. In this case, the property at issue was identified as tainted from the outset, and Sadiq never challenged that.

---

[3] "Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system. . . . Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 309-10 (1989).

Instead, he admitted the property was tainted in his Rule 11 plea agreement, and he has provided no evidence or reason to doubt the veracity of his admissions, which are accorded a great measure of finality and entitled to a strong presumption of verity. The Court concludes that Sadiq's claim under *Luis* fails.

## B. Ineffective Assistance of Counsel

Sadiq next argues that Defense Counsel was ineffective because he (1) failed to prepare a defense or undertake an investigation; (2) modified letters from supporters in preparing Sadiq's sentencing memorandum; and (3) failed to notify Sadiq of a new superseding indictment. The Court will address each of these arguments in turn.

Under the Sixth Amendment, a defendant has a right to "have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. A defendant has a right to "reasonably effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court articulated a two-prong test to show ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown of the adversary process that renders the result unreliable.

*Id.* "There is a strong presumption that legal counsel is competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989). In addition, a "reviewing court must give a highly deferential scrutiny to counsel's performance." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. The defendant bears the burden of showing that counsel was so deficient and that prejudice resulted from counsel's errors. *Id.* at 686-87.

### 1. Failure to Prepare a Defense and Investigate

Sadiq argues that Defense Counsel was ineffective because he failed to prepare a defense and failed to undertake any investigation. Specifically, Sadiq notes that Defense Counsel ignored and failed to investigate Sadiq's claims that (1) he was not connected to or in any way associated with most of the entities and co-defendants named in the indictment; (2) he was not an official partner of Co-Defendant Sachin Sharma, but rather, trusted him; and (3) Sharma forged Sadiq's signature and used his personal information without his knowledge or consent to

open 1st Choice.  Sadiq claims that it was simply not possible for him to be in any conspiracy with any co-defendant because he was not associated with any of them.  He claims that Sharma's actions were unknown to him, and that he did not hire anyone to be a patient recruiter, offer or pay kickbacks or bribes, or participate in alteration or fabrication of patient files—directly or indirectly.  Sadiq claims that had Defense Counsel investigated the various corporations and individuals alleged to have been in the conspiracy, he would have found no evidence of any connection to Sadiq.

The Government responds that Sadiq admitted under oath the factual basis for the charged conduct.  The Government argues that, even assuming that Defense Counsel undertook no investigation, any valid investigation would have only supported the charges.[4]

Sadiq replies that, at the time he pled guilty in March 2015, he was under a lot of medications and had recently had open heart surgery.  He attaches medical records noting the surgery in June 2014 and his medications.  Sadiq also indicates

---

[4] The Government correctly notes that the three cases cited by Sadiq in support of his failure to investigate claim are inapposite because they all involve defendants who went to trial, were convicted by juries, and later claimed ineffective assistance of counsel for failure to investigate or prepare a defense to certain aspects of their cases.  *See Ramonez v. Berghuis*, 490 F.3d 482 (6th Cir. 2007); *Davis v. Booker*, 594 F. Supp. 2d 802 (E.D. Mich. 2009), *rev'd,* 589 F.3d 302 (6th Cir. 2009); *McGahee v. United States*, 570 F. Supp. 2d 723, 736 (E.D. Pa. 2008), *aff'd,* 370 F. App'x 274 (3d Cir. 2010).  In this case, Sadiq pled guilty and admitted the factual basis for the charged conduct.

in an affidavit that Defense Counsel scared or pressured him into taking a plea by

telling him that he could die in jail if he did not plead guilty.

Sadiq admitted to the following in his Rule 11 plea agreement, which he

signed on March 13, 2015.

> Beginning in or around January 2007 and continuing through in or
> around May 2012, Sadiq knowingly and willfully conspired with
> others to commit health care fraud, in violation of 18 U.S.C. § 1349. .
> . .
>
> Sadiq owned and directed two home health care companies, First
> Choice Home Health Care ("First Choice") and 1st Choice Home
> Health Care ("1st Choice"), in and around Detroit, Michigan. Among
> other things, Sadiq and other co-conspirators agreed to: (1) submit
> false and fraudulent claims to Medicare; (2) conceal the submission of
> the false and fraudulent claims by creating fake patient files; and (3)
> receive and transfer the proceeds from the fraud for their personal use
> and benefit. Sadiq and his co-conspirators submitted Medicare
> enrollment applications for First Choice and 1st Choice to allow those
> companies to bill Medicare for home health services. When a
> Medicare contractor audited First Choice, Sadiq created fake patient
> files to make it appear as though home health services were provided
> and/or were medically necessary and submitted those patient files to
> the Medicare contractor to get the claims approved. In order to avoid
> the Medicare contractor's audit, Sadiq started billing patients under
> the Medicare provider number for 1st Choice.
>
> Sadiq also paid kickbacks to patient recruiters in order to obtain the
> information of Medicare beneficiaries, which he would then use to bill
> Medicare for services that were not medically necessary and/or were
> not provided to these beneficiaries.
>
> . . . Sadiq and other co-conspirators submitted claims to Medicare for
> services that were obtained through kickbacks, medically unnecessary,
> and/or not provided, causing Medicare to pay First Choice and 1st
> Choice approximately $12,674,425.55.

. . . Sadiq withdrew substantial sums from First Choice's accounts for his personal use, yet failed to report these proceeds on his individual federal income tax returns. Sadiq willfully used multiple bank accounts to deposit and transfer funds from First Choice, withdrew substantial amounts of cash from First Choice, and concealed from his accountant income that he received from First Choice . . . In total, Sadiq currently owes $1,489,840.88 in taxes, interest, and penalties for tax year 2008 through tax year 2010.

(Doc # 420)

Also on March 13, 2015, at his plea hearing, Sadiq and this Court had the following exchange.

THE COURT:    And you received a copy of the Rule 11 Plea Agreement?
THE DEFENDANT:    Yes, Your Honor.
THE COURT:    And did you go over it with your Counsel?
THE DEFENDANT:    Yes.
THE COURT:    And does your signature appear on page 20?
THE DEFENDANT:    Yes.
. . .
THE COURT:    Today, Mr. Sadiq, did you use any medication?
THE DEFENDANT:    Yes, I have.
THE COURT:    And does the medication that you used today affect your ability to think and reason?
THE DEFENDANT:    It's [sic] sometimes, Your Honor, because I'm on a lot of medication because of cardiac open heart surgery.
. . .
THE COURT:    So right now, the medication isn't affecting your ability to think and reason?
THE DEFENDANT:    Not that - - no, I can understand and I can answer to the best of my knowledge.
THE COURT:    And did you go over the Rule 11 Plea Agreement today with your Counsel?
THE DEFENDANT:    Yeah, in his office.
THE COURT:    And were you able to think and reason okay then?
THE DEFENDANT:    Yes.

(Doc # 538)

Regarding Defense Counsel, Sadiq and this Court had the following exchange during the plea hearing.

> THE COURT:      Are you satisfied with his advice and services so far?
> THE DEFENDANT:      So far, yes, I do. [sic]
> THE COURT:      Now, you said that he did go over the Rule 11 Plea Agreement with you?
> THE DEFENDANT:      Yes.
> THE COURT:      And did he explain to you your constitutional rights?
> THE DEFENDANT:      Yes, Your Honor.
> THE COURT:      And did he tell you that you're going to give up some of your constitutional rights if you plead guilty?
> THE DEFENDANT:      Yes, Your Honor.

*Id.*

The Court also asked,

> The COURT:      Has anyone forced or threatened you to get you to plead guilty?
> THE DEFENDANT:      No, Your Honor.
> . . .
> THE COURT:      Are you pleading guilty freely and voluntarily?
> THE DEFENDANT:      Yes, Your Honor.
> THE COURT:      What did you do to be guilty, sir?
> THE DEFENDANT:      In year [sic] 2007 to 2012, I owned and operated with a partner two different home health companies . . . and I agreed and worked with others to file false home health care claims with Medicare and receive payments from Medicare for the false claims, withdraw the money from Medicare for my personal use.  I also made false statements on my tax return and underreported my income for 2008.
> . . .
> THE COURT:      . . . Do you understand everything in your Rule 11 Plea Agreement?

> THE DEFENDANT:        Yes, Your Honor.
> THE COURT:        . . . well, let's turn to page 3, Paragraph C, continuing on pages 4, 5 and on to page 6, and can you tell me is that an accurate factual basis for your guilty plea?
> THE DEFENDANT:        Yes, Your Honor.

*Id.*

On July 23, 2015, at his sentence hearing, Sadiq stated: "At this point, I'm so remorseful. I'm so sorry and I'm so ashamed of myself . . . ." (Doc # 539)

As the Supreme Court explained in *Strickland*,

> [C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In an ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 691. If defense counsel has reason to believe that pursuing certain investigations would be fruitless or even harmful, failure to pursue those investigations may not later be challenged as unreasonable. *See id.*

Again, "dispositions by guilty plea are accorded a great measure of finality." *Blackledge v. Allison*, 431 U.S. 63, 71 (1977).

> [R]epresentations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id.* at 74.

The Court concludes that, even if the Court found that Defense Counsel's performance was deficient with regards to conducting an investigation, in light of Sadiq's admissions under oath set forth above, Sadiq cannot show that that there is a reasonable probability that, but for Defense Counsel's failure to investigate, the result of the proceeding would have been different. Contrary to Sadiq's conclusory allegations (supported only by his affidavit setting forth the same unsupported assertions), any investigation would have only revealed exactly what Sadiq admitted—that he knowingly and willfully conspired with others to commit health care fraud; that he owned and directed First Choice and 1st Choice; that he agreed with his co-conspirators to submit and did submit fraudulent claims to Medicare, create fake patient files, and receive and transfer the proceeds from the fraud for their personal use and benefit; that he paid kickbacks to patient recruiters; and that he defrauded the IRS by filing false tax returns.

The Court also finds that Sadiq's arguments that he pled guilty because of the effect of his medications and surgery, and/or because Defense Counsel scared or pressured him into it must fail.[5] At his plea hearing, Sadiq swore under oath that his medications were not affecting his ability to think and reason; that he went over the Rule 11 plea agreement with Defense Counsel and was able to think and reason

---

[5] Counsel's performance is not deficient when it "based upon a reasonable decision to offer a guilty plea in exchange for a lighter sentence." *Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996).

then; that he was satisfied with the advice and services of Defense Counsel; and that he pled guilty freely and voluntarily.

### *2. Modification of Letters from Supporters Regarding Sentencing*

Next, Sadiq argues that Defense Counsel was ineffective because he modified letters of support in preparation for sentencing and authored a statement from Sadiq to the Court without allowing Sadiq sufficient time to review it before signing it. Sadiq further states in his affidavit that Defense Counsel misplaced a letter of support from the Governor of Michigan and the president of a national association of which Sadiq was a member.

The Government responds that Sadiq fails to argue how any of these actions prejudiced the defense as required by *Strickland*. The Government argues that the modifications to the letters and the drafting of Sadiq's statement constituted sound legal services and strategy entitled to deference. The Government also notes that Defense Counsel secured a custodial sentence lower than both what the sentencing guideline range provided and what the Government sought, "hardly an example of ineffective assistance of counsel."

Sadiq points to two letters of support which were modified by Defense Counsel. The attached exhibits show that a letter of support from Marie Forman was modified from a handwritten letter to a typed letter. Defense Counsel also removed claims of innocence and added an acknowledgment that Sadiq had pled

guilty to fraud and tax charges. (Doc # 551, Pg ID 9084-85) Likewise, a letter of support from Dr. Claus Petermann was modified to have less of a focus on Sadiq's medical history, and more of a focus on the care that Sadiq provided to patients. Defense Counsel also removed a reference to "unfounded allegations of cheating Medicare" and added an acknowledgment that Sadiq had pled guilty to healthcare fraud. *Id.* at 9086-87. Sadiq acknowledges that Defense Counsel sent the modified letters back to the authors for approval and signature. Sadiq's supporters voluntarily re-signed the modified letters.

The record also shows that Sadiq's statement to the Court (which Sadiq claims he did not have time to review before signing), included in his Sentencing Memorandum, accepts responsibility, expresses remorse, and bears Sadiq's signature. (Doc # 488-5, Pg ID 7234)

Sadiq's affidavit states that Defense Counsel misplaced a letter of support from the Governor of Michigan and the president of a national association of which Sadiq was a member. (Doc # 551, Pg ID 9091) Attached to his Reply, Sadiq includes a letter from Defense Counsel stating, "I am sorry to report that I did not keep any letters (Engler, Granholm, etc.) or drafts of letters (originals), which were not included in the Sentencing Memorandum filed on your behalf." (Doc # 584, Pg ID 9355). Sadiq includes no further details about the content of

these misplaced letters and does not explain how Defense Counsel's failure to include them prejudiced the defense.

The Court finds that Sadiq has provided no argument and cannot show that that there is a reasonable probability that Defense Counsel's actions as to the aforementioned letters prejudiced the defense such that the result of the proceeding would have been different. Rather, Sadiq having already pled guilty freely and voluntarily, Defense Counsel's actions constituted sound legal strategy in preparation for sentencing. Indeed, the record shows that Defense Counsel's strategy was successful and that, due to Sadiq's acceptance of responsibility, he secured a three-level reduction under the sentencing guidelines. Ultimately, after this Court took into account Defense Counsel's arguments regarding Sadiq's age, health, likelihood of recidivism, and true first offender status, the Court sentenced Sadiq to 80 months of imprisonment, below his sentencing guideline range of 121 to 151 months. *See* Doc # 539.

### 3. Failure to Notify of New Superseding Indictment

Lastly, Sadiq argues that Defense Counsel was ineffective because he failed to notify Sadiq of the Third Superseding Indictment. Sadiq argues that he was prejudiced because this denied him the opportunity to plead guilty to the "lesser charges" in the Second Superseding Indictment.[6]

---

[6] While Sadiq relies on *Missouri v. Frye*, he does not claim that Defense Counsel failed to notify him of a formal plea offer. *See Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012) (holding that defense counsel has the duty to communicate formal offers from the prosecution to accept a plea

The Government responds that there was no offer to accept a plea available to Sadiq that expired between the Second Superseding Indictment and the Third Superseding Indictment, and argues that Sadiq cannot show prejudice. The Government notes that the Third Superseding Indictment did not charge Sadiq with any additional charges. The Government further notes that a plea offer was provided to Sadiq no later than March 13, 2014, before the Third Superseding Indictment was filed, and the terms of that offer were essentially the same as the terms that Sadiq ultimately agreed to.

A review of the Second Superseding Indictment and the Third Superseding Indictment shows that the Third Superseding Indictment did not charge Sadiq with any additional charges. *See* Doc # 156; Doc # 287.

Government's Exhibit E indicates that by March 13, 2014, the Government had extended the following plea offer to Sadiq.

> Health Care Fraud Base Offense:  6
> Loss > $7,000,000:  20
> Sophisticated Means:  2
> Leadership Role:  4
> Multiple Counts (Tax Charge):  1
> Acceptance of Responsibility:  (3)
> Total Offense Level:  30 (97-121 months, assuming Criminal History Cat. I).

(Doc # 569-1, Pg ID 9187)

---

on terms and conditions that may be favorable to the accused).

The Third Superseding Indictment was filed on May 1, 2014, and Sadiq accepted the following plea offer on March 13, 2015.

Base Offense Level:  6
Loss over $7,000,000:  20
Health Care Offense over $7,000,000:  3
Sophisticated Means:  2
Leadership Role:  4
Acceptance of Responsibility: (3)
Total Offense Level:  32

(Doc # 420)

A comparison with the March 2014 plea offer shows that the plea offer that Sadiq ultimately accepted was substantially the same as the offer available to him prior to the filing of the Third Superseding Indictment.  The Government notes that the Health Care Offense over $7,000,000 enhancement was inadvertently left off the initial offer and would have necessarily been included before sentencing, and that the deletion of the Multiple Counts enhancement was proper.  In any event, the Court ultimately sentenced Sadiq to 80 months of imprisonment, below the sentencing guideline range of a level 32 or a level 30 offense.  Accordingly, Sadiq's claim that the Third Superseding Indictment had the effect of increasing his penalty is without merit.  The Court concludes that Sadiq cannot show that that there is a reasonable probability that Defense Counsel's failure to notify him of the Third Superseding Indictment prejudiced the defense such that the result of the proceeding would have been different.

## C. Summary

Based on the above analysis, the Court finds that Sadiq failed to show that his sentence was imposed in violation of his Sixth Amendment right to hire counsel of his choice. The Court further finds that Sadiq failed to show that Defense Counsel's performance prejudiced the defense under the *Strickland* test. Sadiq is not entitled to relief under 28 U.S.C. § 2255.

## III. CERTIFICATE OF APPEALABILITY

Rule 22 of the Federal Rules of Appellate Procedure provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253(c)(2). Rule 11 of the Rules Governing Section 2255 Proceedings requires that a district court issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). If a court issues a certificate of appealability, the court must state the specific issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). 28 U.S.C. § 2255(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

A certificate of appealability will not be issued in this case because, as discussed above, the arguments raised by Sadiq in his Section 2255 Motion are without merit.

## IV. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Defendant Mohammed Sadiq's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Criminal Case No. 12-20272, Doc # 551, filed August 8, 2016]** is **DENIED**.

IT IS FURTHER ORDERED that Defendant Mohammed Sadiq's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 **[Civil Case No. 16-12900]** is **DISMISSED with prejudice.** The case is designated as **CLOSED** on the Court's docket.

IT IS FURTHER ORDERED that a certificate of appealability not issue in this case.

IT IS FURTHER ORDERED that the Writ of Mandamus (Doc # 590) filed by Defendant Mohammed Sadiq is **MOOT**.


S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: August 11, 2017

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 11, 2017, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager